UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID MELLOR and<br>DENISE MELLOR,<br><br>Plaintiffs,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*   Civil Action No. 1:21-cv-10319-IT<br>*<br>*<br>*<br>*<br>*<br>* |

MEMORANDUM & ORDER

November 16, 2023

TALWANI, D.J.

  Pending before the court is Defendant JetBlue Airways Corporation's ("JetBlue") Motion for Reconsideration ("Mot. Recons.") [Doc. No. 62]. JetBlue requests that the court reconsider its September 29, 2023 Memorandum & Order ("Order") [Doc. No. 56] denying JetBlue's Motion for Summary Judgment [Doc. No. 41]. For the following reasons, the motion for reconsideration is DENIED.

**I. Background**

  This lawsuit arises out of an incident that occurred during a JetBlue Airways flight in which a cabin overhead bin door allegedly detached and struck Plaintiff David Mellor. Order 1-2 [Doc. No. 56]. David and Denise Mellor allege that negligent maintenance procedures by JetBlue resulted in a failure to diagnose and repair the faulty overhead bin door. Id. at 11. Specifically,

the Mellors allege that the bin door hinge "spline" was either broken[1] or not properly positioned in the hinge. Id.

On summary judgment, the Mellors presented evidence of five separate bin door hinge-related malfunctions of the bin door in question. Id. at 16-19. The Mellors also argued that JetBlue's aircraft maintenance logs for these incidents did not comply with Federal Aviation Regulations ("FAR"s) as they did not provide enough detail regarding the defects recorded and the actions performed by JetBlue mechanics. Id. at 11. The Mellors contend that, had JetBlue complied with applicable FARs, the faulty bin door hinge would have been identified and remedied prior to the incident. Id.

In its Motion for Summary Judgment [Doc. No. 41], JetBlue argued that the relevant maintenance actions performed were, in fact, compliant with FARs. Order 13-14 [Doc. No. 56]. JetBlue pointed to 14 C.F.R. § 121.709(e), which provides that an air carrier may certify compliance with its maintenance manual through the signature of an authorized certified mechanic or repairman, rather than providing detailed reports of all repairs. Id. at 4-5.

JetBlue also argued that the 750-Hour Cabin Condition Check ("750-Hour Check") performed a month prior to the incident on January 6, 2018, confirmed functionality of the splines. Id. at 11-12. JetBlue contended that while the 750-Hour Check does not explicitly mandate a check of hinge splines, "it is clearly implicit that [it] requires an inspection of the … housing spline, for 'condition and security.'" Id.

In denying JetBlue's motion, the court found, *inter alia*, that (1) based on 14 C.F.R. § 121.709(e), the court "takes the entries in the Airplane Maintenance Log at face value insofar

---

[1] The court rejected the broken spline theory in the Memorandum & Order 17 [Doc. No. 56]. As such, the Mellor's case is proceeding based on the incorrectly positioned spline theory. Id.

as they specify the defect and the procedures used to address the defect, and finds that where so documented in accordance with JetBlue's maintenance manual, the entries are sufficient to show that such procedures were actually performed and were performed correctly," and (2) there is no implicit requirement to check the spline during a 750-Hour Check. Id. at 11-12, 15 [Doc. No. 56].

## II. Discussion

JetBlue filed the present Motion for Reconsideration [Doc. No. 62] arguing that the court erred both in applying an overly restrictive interpretation of 14 C.F.R. § 121.709(e) and in its unwillingness to infer a spline check during a 750-Hour Check.

### A. 14 C.F.R. § 121.709(e)

JetBlue argues that the court did not "fully adhere[] to [] § 121.709(e)" because it takes the aircraft maintenance log entries "'at face value' only." Mot. Recons. 2-3 [Doc. No. 62] (emphasis in original). JetBlue argues that the court's interpretation is flawed where the court took a mechanic's signature to mean only that whatever work was performed was done correctly. Id. JetBlue would have the court extend this reasoning and find that a signature also indicates that the *correct* work was performed. Id.

Section 121.709(e) allows a mechanic's signature to certify the § 121.709(b)(2)(i) requirement that "[t]he work was performed in accordance with the requirements of the certificate holder's manual." 14 C.F.R. § 121.709(e).[2] According to the plain language of that

---

[2] The relevant regulations read as follows:

> …(b) The airworthiness release or log entry required by paragraph (a) of this section must—
>
> (1) Be prepared in accordance with the procedures set forth in the certificate holder's manual;
>
> (2) Include a certification that—

3

provision, a mechanic's signature means only that whatever work was performed was performed properly. Id. It does not permit the court to draw inferences about which specific procedure was performed. Thus, where the maintenance log does not specify what procedure was performed, the signature does not independently provide such information. It would be unreasonable for this court to read § 121.709(e) to mean that every aircraft technician infallibly chooses the correct remedy for a mechanical issue in all circumstances.

JetBlue further argues that § 121.709(e) "does <u>not</u> require the JetBlue mechanics to more particularly 'specify the [bin] defect and the procedures used to address the defect,' and does <u>not</u> require the JetBlue mechanics to 'document[] in accordance with JetBlue's maintenance manual [so] the entries are sufficient to show that such procedures were actually performed and were performed correctly." Mot. Recons. 3 [Doc. No. 62]. JetBlue is correct that § 121.709(e) does not require this specificity. But JetBlue's maintenance manual does. Id. at 3-4.

JetBlue quotes the JetBlue Maintenance Forms Manual which instructs mechanics completing the applicable portion of an Aircraft Maintenance Log to "[e]nter the description of the resolved action or deferral details. Include AMM [Aircraft Maintenance Manual] reference

---

(i) The work was performed in accordance with the requirements of the certificate holder's manual; (ii) All items required to be inspected were inspected by an authorized person who determined that the work was satisfactorily completed; (iii) No known condition exists that would make the airplane unairworthy; and (iv) So far as the work performed is concerned, the aircraft is in condition for safe operation; and

(3) Be signed by an authorized certificated mechanic or repairman except that a certificated repairman may sign the release or entry only for the work for which he is employed and certificated."

. . . (e) Instead of restating each of the conditions of the certification required by paragraph (b) of this section, the air carrier may state in its manual that the signature of an authorized certificated mechanic or repairman constitutes that certification.

14 C.F.R. § 121.709.

when applicable." Id. JetBlue dismisses the significance of the latter half of this provision. Rather, JetBlue argues that because JetBlue's manual contains a § 121.709(e) authorization, the AMM reference provision is inapplicable. Id. at 4. JetBlue would have the court interpret § 121.709(e) as exempting JetBlue from following its own procedures. But FARs do not negate compliant rules air carriers place on themselves via their maintenance manuals.[3] In fact, C.F.R. § 121.709(b)(1) explicitly states that aircraft maintenance logs must "be prepared in accordance with the carrier's maintenance manual." Id. at 2. As such, JetBlue cannot cherry-pick which of its internal maintenance procedures it would like to apply, and the court does not agree that the provision is irrelevant. Contrary to JetBlue's contention, "as applicable" indicates that there may be circumstances where a specific reference to a procedure is appropriate.

For the reasons discussed, the court's interpretation of C.F.R. § 121.709(e) and JetBlue's Maintenance Forms Manual have not changed. Based on this interpretation, and without evidence demonstrating that the correct maintenance procedures were performed during the five instances in question, the question of what maintenance procedures JetBlue performed remains one of fact for the jury.

### B. 750-Hour Cabin Condition Check

JetBlue also argues that there is an inherent requirement in the 750-Hour Check checklist to check the hinge splines. Id. at 4. To support this argument, JetBlue points to two checklist

---

[3] On this point, JetBlue also states that where a conflict exists between an air carrier's maintenance manual and FARs, FARs trump. Mot. Recons. 4 [Doc. No. 62]. JetBlue is correct in this assertion, but this is not a *conflict*. There is nothing about the AMM reference provision that contradicts § 121.709(e). Rather, the AMM reference provision is an additional restriction that still falls within the confines of FARs at large. To call this provision a conflict would imply that any time a mechanic includes a reference, they are in violation of FARs, and more broadly, would imply that air carriers are prohibited from imposing any of their own internal procedures not explicitly stated in FARs, which is obviously not the case.

steps which state, "[c]heck bin doors for condition and security," and "[c]heck bin compartment for condition and security," both of which are followed by amplifying instructions directing the mechanic to focus on cosmetic issues. Id.; Def.'s SOMF, Ex. 11 (Task Card No. A320-25-20-00-200-900-A) 6 [Doc. No. 42-11]. JetBlue believes the court erred in finding that these follow-on instructions "underscore that the technician performing the [check] is to look for cosmetic defects, not perform a functional inspection." Mot. Recons. 4 [Doc. No. 62]. The court disagrees for two reasons. First, the relevant portion of the 750-Hour Check is prefaced by an overarching instruction that specifies a *visual* check of the cabin. Second, even if some kind of functionality check could be inferred from the phrase "condition and security," these two steps pertain to the bin doors and bin compartments themselves, not the hinges.

JetBlue also argues that mechanics do, in fact, perform "functional inspections" during a 750-Hour Check and supports this by pointing to three steps in the checklist. Id. The first, "[e]nsure excessive force is not required to unlatch door," pertains to the door's latch. Def.'s SOMF, Attachment 11 (Task Card No. A320-25-20-00-200-900-A) 6 [Doc. No. 42-11]. The second, "[e]nsure all doors close properly," pertains only to the operation of shutting the door and does not specifically require a check of the hinges and/or splines. Id. And the third, "[c]heck bin doors for condition and security," is a similarly general statement. Id. The court finds that none of these requirements dictate that a mechanic performing a 750-Hour Check must perform a functional inspection of the hinges and splines.

JetBlue also offers testimony from its expert that "a visual inspection of the inside of an [a]ircraft overhead bin stowage compartment can determine if the spline is inserted into its bin compartment female housing, if the inserted spline center tongue with its locking pin is in place or missing, or if the spline is in the partially-out position." Mot. Recons. 4-5 [Doc. No. 62]. The

6

operative word here is "can," meaning such a discovery is possible, but not guaranteed. The court acknowledges that a technician could visually identify and remedy a defective spline on a 750-Hour Check. But that reasoning does not mean that a 750-Hour Check *will* visually identify and remedy a defective spline.

Finally, JetBlue asserts that the mechanic who performed the 750-Hour Check was able to determine the condition of the splines. Id. at 5. However, the only evidence JetBlue presents for this contention are standalone photographs taken several years after the incident of hinges and splines in various positions, detached from the bin compartment and doors. Id.; see Janco Dep. 22 [Doc. No. 42-8]. These photographs are entirely unrelated to the 750-Hour Check which took place on January 6, 2018.

Based on the foregoing reasoning, and in the absence of any evidence that the specific 750-Hour Check conducted on January 6, 2018, yielded a visual identification of a defective spline, the record does not dispositively establish a properly functioning spline prior to the incident. As such, whether a defective spline existed following January 6, 2018, and caused the incident remains a question of fact for the jury.

**III.   Conclusion**

Where JetBlue has failed to establish a manifest error of law, newly discovered evidence, or that the court has patently misunderstood some aspect of this matter, its Amended Motion for Reconsideration [Doc. No. 62] is DENIED.

IT IS SO ORDERED

November 16, 2023                           /s/ Indira Talwani
                                            United States District Judge