UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID MELLOR <br> and DENISE MELLOR, <br>     Plaintiffs <br><br> vs. <br><br> JETBLUE AIRWAYS CORPORATION, <br>     Defendant | ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO. 1:21-cv-10319 <br> ) <br> ) <br> ) |

**OPPOSITION OF PLAINTIFFS TO DEFENDANT'S
MOTION IN LIMINE RE: SPECULATIVE LIABILITY THEORIES**

**I. INTRODUCTION**

The defendant's Motion is nothing more than a repackaged version of its unsuccessful Motion for Summary Judgment disguised as a motion *in limine*. In requesting that the Court preclude plaintiffs from presenting *any* plausible explanation as to how an overhead bin can and did detach, JetBlue merely repeats the arguments that this Honorable Court thoroughly considered and properly rejected when it denied JetBlue's actual motion for summary judgment. This Honorable Court should deny this motion *in limine* on the same grounds.

IN SUPPORT OF THIS OPPOSITION, the plaintiffs state the following:

- Defendant misstates the law; plaintiffs need not prove the *exact* mechanism that caused the overhead bin door to detach. Rather, plaintiffs need only prove that, more likely than not, the overhead bin door detached due to JetBlue's negligence. Plaintiffs meet this burden with the admissible testimony of their well-qualified expert witness.

- Defendant must not be rewarded for their own failure to document the exact mechanism that caused the overhead bin door to detach, particularly where such documentation was required under Federal Law. Allowance of defendant's Motion will set a dangerous precedent that will encourage future corporate defendants to commit to anemic documentation as litigation strategy.

- Plaintiffs possess direct evidence from a subsequent joint inspection of JetBlue's own aircraft, that JetBlue's overhead bin doors *can* and *do* detach due to broken splines. Accordingly, such mechanism is anything but speculative.

- Allowance of defendant's Motion will result in significant prejudice and ensure that plaintiffs do not receive a fair trial. Depriving plaintiffs of the opportunity to explain *how* such an overhead bin door can and does detach will leave the improper impression with the jury that it can only detach through an Act of God or by the negligence of a passenger, which is neither true nor supported by the evidence in this case.

## II. ARGUMENT

### A.   Defendant's Second Attempt at Summary Judgment Must Be Denied for the Same Reasons This Honorable Court Already Articulated

JetBlue's Motion is simply a reiteration of the arguments that failed to persuade this Court to grant summary judgment. Indeed, JetBlue expressly advocates "dismissal" of Plaintiffs' negligence claim "for failure to sustain their burden of proof." Def. Mtn. at 1, Doc. No 88. Yet its Motion fails to grapple with this Court's meticulous analysis of the defect entries preceding the incident, which demonstrate five occasions over six months during which the bin door detached but the functional components of its hinges were not examined. Order at 17-20, Doc. No. 56.

This Court has already concluded that "[t]he question of whether it was negligent for JetBlue, when faced with repeated incidents of a bin door detaching from its bin compartment, to perform maintenance actions that did not involve checking functional components of the bin door hinge, **is one that should be left to a jury.**" *Id*. at 20 (*emphasis added*), Doc. No. 56. Nothing in JetBlue's motion justifies abandoning that conclusion and deciding the question as a matter of law.

B.      **Plaintiffs Are Not Required To Prove *Exactly* How This Incident Occurred**

Plaintiffs' well-qualified expert witness has formed opinions based upon his education, training, and experience, that this incident was caused by an overhead bin door detaching, and that the detachment occurred for one of three reasons: (1) the splines were broken; (2) the splines were deformed; or (3) the splines were not fully inserted. It is true, as JetBlue argues, that the expert is unable to determine which of the three potential failure modes occurred.[1] Def. Mtn. at 1, Doc. No 88. Yet the question is academic rather than requisite because each of these three reasons are a result of JetBlue's negligence.

Of note, JetBlue concedes in its Motion that "complete detachment of the bin door is an event which ordinarily would not occur in the absence of negligence." Def. Mtn. at 6, Doc. No. 88. Plaintiffs agree. Nonetheless, JetBlue further states that it is *possible* that the negligence of a passenger caused the door to detach rather than the negligence of its own employees. *Id.* JetBlue makes this argument without a shred of evidence to support it. Further, JetBlue continues to advance this argument in hopes that all parties and this Court will suffer amnesia and disregard this Honorable Court's finding that JetBlue's own maintenance logs prove that the very same overhead bin door detached five times in six months prior to this incident. Order at 17-20, Doc No. 56.

Even if, *arguendo*, the first of these five detachments were caused by a separate act of passenger negligence, a jury could still reasonably conclude that the subsequent chain of repeated detachments was the result of failed maintenance. This question requires an answer by a

---

[1] Some permutation of these scenarios is also possible, such as one spline being broken and the other not fully inserted. Plaintiffs refer to "three failure modes" in this motion merely for convenience, since any combination of failure modes would also render JetBlue liable.

factfinder and should not be decided preliminarily as a matter of law. Plaintiffs will be severely prejudiced if this question is not presented to the jury at trial of this matter.

JetBlue insists that because Plaintiffs cannot establish "exactly" which scenario occurred, there is "complete failure of proof." *Id*. This is not true. Further, it is simply not the law of the forum state, which controls in this diversity case. *Adelson v. Hananel*, 641 F. Supp. 2d 65, 79 (D. Mass. 2009), aff'd, 652 F.3d 75 (1st Cir. 2011) (recognizing that in diversity actions burden of proof is decided under Massachusetts law).

In Massachusetts, a plaintiff who is unable to establish exactly *how* an incident occurred can nonetheless still prevail by establishing that the defendant was more likely responsible than not. *Purdy v. R. A. McWhirr Co.*, 350 Mass. 769, 769, 215 N.E.2d 92, 93 (1966) ("The plaintiff was not required to point out the exact way in which the accident occurred as long as she showed a greater likelihood that her injuries came from an act of negligence for which the defendant was responsible."); *Zezuski v. Jenny Mfg. Co.*, 363 Mass. 324, 329, 293 N.E.2d 875, 879 (1973) (same); see also, *Fuentes v. Consol. Rail Corp.*, 789 F. Supp. 638, 642–43 (S.D.N.Y.), aff'd sub nom. *Fuentes v. Consol. Rail*, 978 F.2d 706 (2d Cir. 1992) (jury could infer the defendant's negligence even where "[m]uch of the physical evidence that might have pointed to the exact sequence of events was destroyed, so it is unclear exactly how the accident occurred").

Here, while Plaintiffs need not rely on *res ipsa loquitur* to prove their case, JetBlue's analysis of that legal issue is nonetheless incorrect. Def. Mtn. at 5-6, Doc. No. 88, citing, *inter alia*, *Japan Lines (USA), Ltd. v. Western Stevedoring & Terminal Corp.*, 396 F. Supp. 437, 441 (D. Or. 1975). "[F]ederal courts in diversity follow state law in deciding whether to apply *res ipsa*." *Travelers Ins. Co. v. Riggs*, 671 F.2d 810, 814–15 (4th Cir. 1982). Moreover, it is well-established in this Commonwealth that a defendant who is responsible for maintaining

equipment used by its invitees *can* face *res ipsa* liability even if it is possible that one of those invitees tampered with the object. *Couris v. Casco Amusement Corp.*, 333 Mass. 740, 740–42, 133 N.E.2d 250, 251–52 (1956) (theater owner held liable for unexplained collapse of chair under *res ipsa*, even though children would sometimes "play and break the seats").

C. **Evidence of Broken Spline Supports Plaintiff's Causation Argument, Is Not Speculative, and Demonstrates that Splines Are Susceptible to Breaking**

Subsequent evidence of failure involving the same component on the same airplane is clearly admissible to prove causation. *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268, n. 8 (7th Cir. 1988); *see, e.g.*, *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 338–40 (5th Cir.) (prejudicial error to exclude evidence of other incidents in which allegedly defective pins snapped). It has long been recognized that "[w]hile only earlier accidents can be relevant to the issue of notice, causation is an issue affected only by the circumstances and the equipment and is not related to the date of the occurrence." *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268, n. 8 (7th Cir. 1988), quoting *Uitts v. General Motors Corp.,* 58 F.R.D. 450, 452 (E.D. Pa. 1972). Here, the fact that the broken spline was discovered more than three years *after* the incident in which Mr. Mellor was injured means that it cannot be used to show that JetBlue was on notice of a problem with broken splines. It can be introduced, however, to corroborate Mr. Mellor's allegations on causation, to the effect that splines are susceptible to breaking.

Using evidence of a subsequent spline failure in this manner falls squarely within the precedent from numerous federal courts of how proof of related incidents with similar equipment can be introduced to establish causation. *Ramos v. Liberty Mut. Ins*. Co., 615 F.2d 334, 338–40 (5th Cir.) (prejudicial error to exclude evidence of other incidents in which allegedly defective pins snapped); *Rimer v. Rockwell Int'l Corp.,* 641 F.2d 450, 456 (6th Cir. 1981) (prejudicial error to exclude evidence of similar fuel-siphoning problems on identical planes); *United Oil Co. v.*

*Parts Assocs., Inc.*, 227 F.R.D. 404, 414 (D. Md. 2005) (post-incident problems with similar products admissible to prove causation); *Bush v. Michelin Tire Corp.,* 963 F. Supp. 1436, 1450–51 (W.D. Ky. 1996) ("subsequent accidents which are substantially similar to the one at issue are admissible to show causation and the dangerousness of the product"). Indeed, the principle is so fundamental that it appears to have been adopted in every jurisdiction in the country. *See Harris v. Peridot Chem. (New Jersey), Inc.,* 313 N.J. Super. 257, 282–83, 712 A.2d 1181, 1193–94 (N.J. App. Div. 1998) (surveying cases and determining that "other jurisdictions uniformly permit the introduction of evidence of other similar accidents or occurrences in a negligence action to show a defective or dangerous condition or causation").

Indeed, because it involves an identical component on the exact same aircraft, this evidence of the plausible cause of the hinge detachments is far stronger than in typical airplane cases, in which courts admit results of *similar* incidents on *similar* planes. *See, e.g.*, *Rimer v. Rockwell Int'l Corp.,* 641 F.2d 450, 456 (6th Cir. 1981) (evidence of related fuel-siphoning problems on similar planes).[2]

Moreover, admission of the broken spline is favored by the policy justifications embodied in Rule 407 of the Federal Rules of Evidence, which prohibits use of subsequent remedial measures to prove negligence.[3] "Rule 407 is based on the policy of encouraging potential defendants to remedy hazardous conditions without fear that their actions will be used

---

[2] Plaintiffs anticipate that JetBlue will claim that because there is no evidence of any subsequent mechanical malfunctions of the hinges on the incident bin door, this evidence should be excluded. However, that does not establish that the discovery of the broken spline at the joint inspection is not admissible. *See*, *Sikkelee v. Precision Airmotive Corp.,* 522 F. Supp. 3d 120, 136 (M.D. Pa. 2021) (degrees of similarity involved in related accidents were "issues of weight to be explored on cross-examination, rather than issues of admissibility"). It merely means that the parties will be free to present their own arguments to the jury about the significance of the documented spline failure.

[3] If Rule 407 were to apply, then plaintiffs could still introduce photographs of the broken spline for purposes other than establishing JetBlue's negligence. For example, they could use the photographs to impeach JetBlue's witnesses. *See* Fed. R. Evid. 407 (stating "the court may admit this evidence for another purpose, such as impeachment…").

as evidence against them." *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1524 (1st Cir. 1991). Yet, when a defendant *fails* to take subsequent remedial measures, [as what occurred here] the same policy considerations favor admission of that fact. *See Ballinger v. Gustafson*, No. 8:22CV213, 2022 WL 16758558, at *4 (D. Neb. Oct. 19, 2022) (recognizing that "Rule 407 has no applicability" when the allegation is that defendants "failed to take *any* remedial actions post-accident").

Of course, it would be ideal to have direct evidence from JetBlue's own records about whether a spline was damaged or broken during any of the five maintenance actions leading up to the accident. The unavailability of that evidence is directly attributable to the failure of JetBlue's employees to adequately inspect the splines and document their work. *See* Order at 20, Doc. No. 56. (recognizing that "on none of the five occasions did the maintenance worker document using the procedure that was needed . . . where they document what procedure was performed at all…") Plaintiffs are prejudiced by Defendant's failure to properly document these events. This Honorable Court should not reward JetBlue's documentation failures. To do so would further prejudice plaintiffs' case. Thus, the condition of the splines should remain a question for the jury.

### III. CONCLUSION

Under Massachusetts law, Plaintiffs are not required to establish exactly how the accident occurred, as long as they can show it is more likely than not that the defendant was at fault. This Court has already ruled that to be a jury question in this case. The motion provides no compelling reason for the Court to reverse course. It should deny the motion and permit Plaintiffs to introduce evidence regarding all of their theories, including the plausible explanation that one or both splines were broken.

8

        Respectfully submitted,
        Plaintiffs,
        By Their Attorneys,
        BREAKSTONE, WHITE & GLUCK, P.C.

        /s/ Marc Breakstone

        MARC BREAKSTONE, BBO # 547981
        Two Center Plaza, Suite 530
        Boston, MA  02108-1906
        617-723-7676
Dated:  April 4, 2024        breakstone@bwglaw.com

## Certificate of Service

    I, Marc L. Breakstone, of Breakstone, White & Gluck, P.C., certify that on this date, a copy of the foregoing was electronically filed and served on all parties by filing with the Court's electronic filing system through which all parties may access this filing through the Court's CM/ECF System.

Dated: April 4, 2024          Marc L. Breakstone, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID MELLOR )<br>and DENISE MELLOR, )<br>    Plaintiffs )<br>)<br>vs. )<br>)<br>JETBLUE AIRWAYS CORPORATION, )<br>    Defendant ) | CIVIL ACTION NO. 1:21-cv-10319 |

**[PROPOSED] ORDER DENYING
DEFENDANT JETBLUE AIRWAY CORPORATION'S
MOTION IN LIMINE RE: PLAINTIFFS' SPECULATIVE LIABILITY THEORIES**

Having considered *Defendant JetBlue Airway Corporation's Motion In Limine Re: Plaintiffs' Speculative Liability Theories*, the Court hereby denies the motion.

**SO ORDERED.**

Date: _____, 2024      _____
                                                The Hon. Indira Talwani
                                                United States District Judge